UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ROLL COATER INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-569 JVB |
| | ) | |
| LOCAL UNION 1191-14 UNITED | ) | |
| STEEL WORKERS OF AMERICA, *et* | ) | |
| *al.*, | ) | |
| | ) | |
| Defendants. | | |

## REPORT AND RECOMMENDATION

### I.   PROCEDURE

On July 26, 2004, Local Union 1191-14 United Steel Workers of America, *et al.*,

(collectively "The Union") filed a grievance on behalf of one of its members, Joe Ludwig

(Ludwig), against Roll Coater Inc. (Roll Coater).  On March 17, 2006, the parties appeared

before an arbitrator, and on August 7, 2006, the arbitrator issued an award in favor of the Union.

On September 19, 2006, Roll Coater filed its complaint in this Court seeking review of

the arbitrator's decision, to have his decision set aside, and his reward vacated.  On April 30,

2007, both parties filed cross motions for summary judgments.  On May 29, 2007, the parties

filed their respective responses, and on June 13, 2007, the parties filed their respective replies in

support of their motions.  Also on June 13, 2007, the Union filed a motion to strike an affidavit

Roll Coater had submitted, and on June 21, 2007, Roll Coater filed a response to that motion.

On February 11, 2008, these matters were referred to the undersigned.  This Court may issue a

report and recommendation on all pending matters pursuant to its referral order and 28 U.S.C. §

636 (b)(1)(B).

II.   ANALYSIS

A.   Standard of Review

Under 29 U.S.C. § 185(a), a party may file suit in federal court for violation of contracts between an employer and a labor organization, which includes review of a labor arbitration decision. See Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001). Judicial review of a labor-arbitration decision pursuant to a collective bargaining agreement (CBA) is very limited.  Garvey, 532 U.S. at 509; see also Arch of Ill. v. District 12, United Mine Workers of Am., 85 F.3d 1289, 1292 (7th Cir. 1996).  "If an 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not even suffice to overturn his decision.'" Garvey, 532 U.S. at 509 (citations omitted).  Only when an arbitrator strays from the interpretation and application of the agreement to dispense his own brand of "industrial justice" will his decision be unenforceable.  Id.  Furthermore, this Court cannot re-evaluate findings of fact or consider whether there is equity in a claim.  Id.  This Court's role is limited to determining "whether the arbitrator exceeded the powers delegated to him by the parties," and any reasonable doubts are resolved in favor of enforcing the arbitration award.  Arch of Ill., 85 F.3d at 1292.  "It is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract that the award can be said not to 'draw its essence from the collective bargaining agreement.'" Amax Coal Co. V. United Mine Workers of Am., 92 F.3d 571, 575 (7th Cir. 1996) (emphasis in original).

B.   Relevant Facts

Ludwig was an employee at Roll Coater who did a variety of jobs (Arbitrator's Opinion at 8). On July 22, 2004, Ludwig worked in a certain area that handled metal, and he handled metal without wearing gloves as required pursuant to Roll Coater's safety policies (Id.). Ultimately, this event led to Roll Coater terminating Ludwig, the Union filing a grievance on Ludwig's behalf, and the arbitrator's decision.

The arbitrator indicated that the issue was whether the company had "just cause" to terminate Ludwig for the safety violation of not wearing gloves (Arbitrator Opinion at 3). The arbitrator found that "[Ludwig] has clearly violated the Company's safety rules" (Arbitrator Opinion at 20). The Arbitrator indicated that Roll Coater did not effectively communicate it's policy of automatic termination for safety violations to Ludwig, and that Ludwig had served for 29 years (Id at 19, 20). Also, the Arbitrator pointed to the fact that another employee who committed the same safety infraction was only warned instead of terminated (Id. at 22). Based on these findings, the arbitrator concluded that "the penalty of Termination was too severe for the transgression of not wearing safety gloves" (Arbitrator Opinion at 15, 20).

C.    The Parties' Motions for Summary Judgment

The only portion of the CBA that discusses just cause indicates:

[t]he management of the Company's operation and direction of working forces, including but not limited to the rights to establish new jobs, . . . discipline for just cause, suspend for just cause, discharge for just cause, . . . are vested exclusively in the Company subject only to such limitations as are set forth in this Agreement.

(Collective Bargaining Agreement at 5). The parties do not dispute that the CBA does not provide any further definition of "just cause."

However, Roll Coater argues that the arbitrator ignored part of the language from the CBA. Specifically, Roll Coater argues that the CBA gave Roll Coater the right to set appropriate

standards on safety and health policies.  Roll Coater claims it had a clearly established policy in place that an employee could be terminated for committing a safety violation.   As a result, Roll Coater argues that because the arbitrator found that Ludwig had committed a safety violation, which was created pursuant to the CBA, it was inconsistent for the arbitrator to conclude Roll Coater could not discharge Ludwig.

This situation is not one where the arbitrator created a different remedy even though there was no violation of the CBA.  See e.g. Amax Coal Co., 92 F.3d at 576.  The arbitrator indicated, "while [Ludwig] has clearly violated the Company's safety rules, I must determine whether [Ludwig] should have been terminated for this violation" (Arbitrator Opinion at 20).  The CBA indicates that Ludwig could only be terminated for "just cause." The arbitrator never stated that Roll Coater had just cause to terminate Ludwig because he committed a safety breach.  Further, and more importantly, the CBA does not indicate that a violation of the safety rules as established by Roll Coater automatically constitutes "just cause" for termination.  In fact, the CBA does not indicate what constitutes "just cause" or what offenses would qualify as "just cause" for termination.

Roll Coater argues that because the CBA is silent as to what constitutes "just cause," the arbitrator should have deferred to other language from the CBA.  Specifically, Roll Coater claims the arbitrator should have given more weight to the rules and policies Roll Coater promulgated pursuant to the CBA in determining whether Roll Coater had "just cause" to terminate Ludwig.[1]

---

[1]This Court notes that the Anheuser-Busch, 280 F.3d 1133 (7th Cir. 2002) is not analogous to the current dispute.  In that case, the language of the CBA was clear and unambiguous, and for that reason, the arbitrator erroneously looked at other factors.  In the present case, what constitutes "just cause" is not clear and unambiguous because the CBA is silent in defining "just cause."

The 7th Circuit has not addressed whether a reviewing court should defer to the arbitrator's interpretation of the scope and meaning of a term, such as "just cause," when it is not defined in the CBA.  However, other Circuits have addressed this question.  The 8th, 9th, 10th, and 11th Circuits have found that when a crucial term, such as "just cause," is not defined in the contract or subject to multiple interpretations, a reviewing court should defer to the arbitrator's interpretation of the provision.  Trailmobile Trailer, LLC v. Int'l Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, 223 F.3d 744, 747 (8th Cir. 2000); Int'l Ass'n of Machinists & AeroSpace Workers v. San Diego Marine Const. Corp., 620 F.2d 736, 738-39 (9th Cir. 1980). Local No. 7 United Food & Commercial Workers Int'l. Union v. King, 222 F.3d 1223, 1229 (10th Cir. 2000); IMC-Agrico Co. v. Int'l Chemical Workers Council of United Food, 171 F.3d 1322, 1328 (11th Cir. 1999).  Similarly, the 2nd Circuit has held that if one party wanted a specific act to constitute "just cause," the CBA should have explicit language indicating such to be the case.  Hill v. Staten Island Zoological Soc., Inc., 147 F.3d 209, 214 (2d Cir. 1998) (quoting First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338, 118 F.3d 892, 896 (2d Cir. 1997).

However, the 4th Circuit has agreed with Roll Coater's position that when the CBA reserves to management the right to make and enforce disciplinary rules, any rules or policies promulgated are incorporated into the CBA and have the force of the contract language. Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Intern. Union, 76 F.3d 606, 610 (4th Cir. 1996).

But this Court finds that Mountaineer Gas Co. is the minority position and, even though the 7th Circuit has not addressed this issue, that the 7th Circuit would likely agree with the 8th,

9th, 10th, and 11th Circuits instead of the 4th.  The 7th Circuit has stated that "just cause is a flexible concept, embodying notions of equity and fairness, and is certainly open to interpretation by the arbitrator."  Arch of Ill., 85 F.3d at 1294.  Furthermore, the 7th Circuit has approved arbitrators looking to other factors outside the collective bargaining agreements when addressing what constitutes "just cause."  See Id. (approving arbitrator's reliance on seniority). E.I. Dupont de Nemours and Co. v. Grasselli Employees Independent Ass'n. of East Chi., 790 F.3d 611, 614-15 (7th Cir. 1986) (approving arbitrator's reliance on failure to meet procedural guaranties); see also Tootsie Roll Indus., Inc. v. Local Union No. 1,, 832 F.2d 81, 84 (7th Cir. 1987) ("[R]eliance on the law of the shop is appropriate to interpret ambiguous contract terms."). Consequently, this Court will defer to the arbitrator's interpretation of ambiguous terms that are not defined in the CBA.

The CBA did not specifically define "just cause."  Consequently, what qualifies as "just cause" is ambiguous.  As a result, the arbitrator examined other factors specific to Ludwig's situation, such as Ludwig's term of service, to interpret what constituted "just cause."  Even though the arbitrator looked at factors besides the CBA language, he was still interpreting the CBA.  How the arbitrator decides to interpret an undefined term in the CBA is where this Court defers to the arbitrator's discretion.  Consequently, this Court finds that the arbitrator was construing and interpreting the CBA, and it would be inappropriate to set aside the arbitrator's award.

Roll Coater argues that it is unclear whether the arbitrator is looking to factors beyond the language of the CBA to define what constitutes "just cause" or whether the arbitrator simply ignored the language of CBA to determine what was "fair."  Even if Roll Coater's interpretation

6

of the arbitrator's analysis is reasonable and the arbitrator may have been ignoring the language of the CBA, it only establishes that the arbitrator's opinion is ambiguous.  "[A] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce an award."  <u>Arch of Ill</u>., 85 F.3d at 1292-93.  The arbitrator also specifically states that the issue he must resolve is whether Roll Coater had "just cause" to terminate Ludwig.   Also, the arbitrator does not explicitly and unequivocally indicate that he is not following the language from the CBA.  Both of which suggest that it is also reasonable that the arbitrator was trying to interpret an undefined term from the contract, "just cause."  Simply put, despite Roll Coater's contention, any reasonable doubt as to whether the arbitrator interpreted the contract must be resolved in favor of enforcing the award.  <u>Ethyl Corp. v. United Steelworkers of America, AFL-CIO-CLC</u>, 768 F.2d 180, 185 (7th Cir. 1985.

Finally, Roll Coater points to the facts and evidence surrounding Ludwig's situation in a final plea to this Court to overturn what Roll Coater deems to be a flat wrong result.  But whether the arbitrator's decision is unfair, questionable, or even flat wrong based on the facts surrounding Ludwig's situation is of no concern to this Court.

The question . . . is not whether the arbitrator . . . erred in interpreting the contract; it is not whether [he] clearly erred in interpreting the contract; it is not whether [he] grossly erred in interpreting the contract; it is whether [he] interpreted the contract.

<u>George Watts & Son, Inc. v. Tiffany & Co.</u>, 248 F.3d 577, 579 (7th Cir. 2001).  Because this Court has found the arbitrator was interpreting the contract, Roll Coater's motion for summary judgment should be **DENIED** and the Union's motion for summary judgment should be **GRANTED**.

7

    D.    <u>The Union's Request for Attorney Fees and Pre-Judgment Interest</u>

The Union asks this Court to assess pre-judgment interest and attorney's fees on Roll Coater for having to defend this lawsuit and for not complying with the arbitrator's award. The Labor-Management Relations Act does not provide for shifting costs or fees to enforce labor arbitration awards, and as a result, fees and costs are discretionary pursuant to Fed. R. Civ. P. 11. <u>Dean Foods Co. v. United Steel Workers of Am.</u>, 911 F.Supp. 1116, 1129 (N.D. Ind. 1995) (J. Sharp). The prevailing party is entitled to attorney's fees only when the opposing party's suit was frivolous or brought in bad faith to harass rather than to win. <u>Id</u>. Absence of legal precedent or the presentation of an unreasonable argument does not constitute frivolousness. <u>Id</u>.

This Court finds that fees are not appropriate. Even though this Court has found that the arbitrator was interpreting the CBA, that does not equate to a finding that Roll Coater's position was frivolous. In fact, this Court noted that precedent from the 4th Circuit even supported Roll Coater's position. Simply put, Roll Coater did not bring this suit to harass the Union or Ludwig, and as a result, assessing fees and costs is not appropriate. The Union's request for fees and costs should be **DENIED**.

    E.    <u>Roll Coater's Motion to Strike</u>

Because this Court recommends that the Union is entitled to summary judgment even after considering all of Roll Coater's evidence, the Union's motion to strike should be **DENIED AS MOOT** [Doc. No. 26].

**III.**    **CONCLUSION**

The Union's motion to strike should be **DENIED AS MOOT** [Doc. No. 26]. Because the arbitrator was following the language of the CBA in crafting his award, this Court

**RECOMMENDS** that the Union's motion for summary judgment should be **GRANTED** [Doc. No. 21], Roll Coater's motion for summary judgment should be **DENIED** [Doc. No. 19], and the Union's request for fees and costs be **DENIED**.

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**.
>
> **SO ORDERED.**

Dated this 19TH Day of May, 2008.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge